# Title Guaranty & Surety Co., Appellant, *v.* Lippincott.

*Contracts—Bonds—Construction—Incorporation by reference—Statute of frauds—Agreement to pay debt of another—Parol evidence rule—Evidence.*

1. The general rule that oral evidence cannot ordinarily be accepted to supply deficiencies in a writing sued upon does not prevent the admission of oral evidence to show the circumstances under which the contract was made, or to show to what subject-matter it applies.

2. Separate writings may be connected by oral evidence provided they contain internal reference to each other.

3. The memorandum required by the statute of frauds to charge a defendant for the debt or default of another may be on different papers, if one contains reference to the other. The subject-matter of such contract must appear from the writing, but it may be expressed in general terms, and parol evidence is admissible to identify it.

4. Parol evidence cannot be admitted to show that certain words, not on their face a guarantee, do in fact constitute such. The entire guaranty of the debt of another must be in writing, but not the whole contract.

5. In an action against the sureties of an indemnity bond given to secure the plaintiff company against loss by reason of its under-

taking as surety on the official bond of a tax collector, it appeared that the bond in suit recited that the plaintiff had become surety at defendant's request on a bond, naming the amount, on which such tax collector was principal, obligated the parties in usual phraseology, was sealed and dated, named the principal and sureties as such, and stated the consideration, and the condition clause recited the fact that the signatories were to indemnify the plaintiff against all liability by reason of its suretyship under the other instrument, but failed to recite the year of the taxes therein referred to or the precise place where they were to be assessed and collected, but such particulars appeared in the other instrument, which was executed the same day. On the trial the lower court excluded both bonds and directed a verdict for the defendants. *Held,* in reversing the lower court, (1) that the bond sued upon contained a sufficient memorandum within the requirements of the statute of frauds; (2) that parol evidence was admissible to connect the bond in suit with the other against which it was alleged to have been given as indemnity.

Argued Oct. 21, 1915.   Appeal, No. 112, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1912, No. 880, on verdict for defendants in case of The Title Guaranty & Surety Company, a corporation, v. U. E. Lippincott, Franklin P. Iams and Thomas C. Gabler.   Before BROWN, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.   Reversed.

Assumpsit on indemnity bond.   Before CARNAHAN, J.
The facts appear by the opinion of the Supreme Court.
Verdict for defendant by direction of the court, and judgment thereon.   Plaintiff appealed.

*Errors assigned* were various rulings on evidence and in directing a verdict for the defendants.

*George J. Shaffer,* of *Shaffer and Schoyer,* for appellant.

*John C. Bane,* with him *Henry A. Jones* and *J. M. Shields,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, January 3, 1916:

On April 21, 1906, U. E. Lippincott, one of the defendants, who was tax collector of the Borough of Sheraden, executed his official bond to the Commonwealth of Pennsylvania in the sum of $112,000, upon which The Title Guaranty & Surety Company, plaintiff, became surety. On the same day Mr. Lippincott, as principal, and Franklin P. Iams and Thomas C. Gabler, the other two defendants, as sureties, executed a certain counter bond to indemnify the plaintiff company in the sum of $25,000, against loss by reason of its undertaking as surety on the aforesaid official bond. This latter instrument recites and is conditioned as follows: "Whereas, the said The Title Guaranty & Surety Company, has become or is about to become surety at the request of the said U. E. Lippincott, Franklin P. Iams and Thomas C. Gabler, on a certain bond in the sum of one hundred and twelve thousand ($112,000) dollars, wherein U. E. Lippincott is principal, conditioned that he shall and will, well and truly collect and pay over or account for, according to law, the whole amount of taxes charged and assessed in the duplicates which shall be delivered to him for the year beginning on the......day of....... Now the condition of the above obligation is such, that if the above bounden U. E. Lippincott, Franklin P. Iams and Thomas C. Gabler, their executors or administrators, shall at all times hereafter save harmless and keep indemnified the said The Title Guaranty & Surety Company, its successors and assigns, against all suits, actions, debts, damages, demands, costs, charges and expenses, including costs and counsel fees, at law or in equity and against all loss and damage whatever, that shall or may at any time hereafter happen or accrue to it, its successors or assigns, for or by reason of the suretyship of the said company, as aforesaid, then this obligation to be void and of no effect; otherwise to be and remain in full force and virtue in law.".

The present suit was brought on the $25,000 indemnity bond, to recover losses alleged to have been suffered by the plaintiff through and by reason of its execution of the aforesaid $112,000 bond. At trial the plaintiff offered the first of these bonds, but it was objected to on the ground that the instrument was not self-sustaining in that it did not sufficiently show, within the requirements of the statute of frauds, against what obligation it was given as indemnity; this objection was sustained. The official bond recited in the other bond was then offered and refused. Offers to show by parol the attending circumstances at the execution of the two bonds, and of testimony to apply the general description contained in the former, or $25,000 bond, of the obligation against which it was given as indemnity, to the latter, or $112,-000 bond, in order more directly to connect the two, were likewise excluded, as also were offers to prove the losses alleged to have been sustained by the plaintiff through the default of the defendant Lippincott, principal in the last mentioned bond. All of these rulings are assigned as error. The defendants did not proffer any testimony, and the court below directed a verdict in their favor (likewise assigned as error), saying: "This suit is brought upon a written instrument, upon a bond. The plaintiff claims liability on that bond, and the bond does have some reference to the collection of some taxes somewhere, and apparently was given to protect the guarantor of another bond. The difficulty is that the bond upon which the suit is brought does not itself explain what it is for with sufficient accuracy to enable you to try the case intelligently or to enable the court to try it intelligently. It is not competent to introduce parol testimony to explain what the bond means. The bond should itself explain what it means. It does not do so with sufficient accuracy to entitle the plaintiff to proceed on it." After this, judgment was entered on a verdict for the defendants; from which judgment the plaintiff has appealed.

Three questions involved are stated for our considera-
tion, but, owing to the view we take of the case, only two
of these need be noted here, i. e.: (1) was the bond di-
rectly sued on a sufficient memorandum within the re-
quirements of the statute of frauds, (2) was parol evi-
dence admissible to connect this bond with the other
against which it was alleged to have been given as in-
demnity. After reading all the cases under our Act of
1855, infra, that bear upon the propositions before us,
and consulting other authorities, we are of opinion that
the writing on which action was brought, in connection
with the instrument therein referred to, should have
been held a sufficient memorandum within the require-
ments of the statute, and that parol evidence should have
been received to show the circumstances attending their
execution, in order to elaborate, so far as necessary to
a just trial of the cause, the connection between the two
bonds, and to prove the loss incurred by the plaintiff.

The Act of April 26, 1855, P. L. 308, provides: "No
action shall be brought whereby to charge..:....the de-
fendant, upon any special promise, to answer for the debt
or default of another, unless the agreement upon which
such action shall be brought, or some memorandum or
note thereof, shall be in writing, and signed by the party
to be charged therewith." The writing here declared
on, the $25,000 bond, contains apt, complete and usual
phraseology to obligate the parties sought to be charged;
it is sealed and dated; it names the principal as such,
and sufficiently indicates the sureties and the moving
consideration; it recites, in a general way, the other in-
strument executed by the plaintiff, against which it was
an indemnity, and the obligation thereby assumed, out
of which the debt sued for arose; then, the condition
clause recites the fact that the signatories are bound to
save and keep harmless the present plaintiff against "all
suits, actions, debts, damages, demands, etc.," by reason
of its suretyship under the aforesaid other instrument,
viz: the $112,000 bond. It is true, the bond in question

does not recite the year of the taxes therein referred to, or the precise place where they were to be assessed and collected, but all such particulars appear in the other instrument, which was executed the same day; therefore, the substantial question is: Does the writing declared on contain a sufficient reference to the prior bond, within the requirements of the statute, as construed by the authorities. As already indicated, we are of opinion that it does, and this we shall now endeavor to make plain.

It is to be noted that the Act of 1855, supra, does not require that the whole agreement upon which the action is brought shall be reduced to writing, but merely that "some memorandum or note thereof shall be in writing." After giving the general rule that oral evidence cannot ordinarily be accepted to supply deficiencies in the writing sued upon, 20 Cyc. 318 states: "However, this rule does not prevent the admission of oral evidence to show the circumstances under which the contract was made......or to show to what subject-matter ......it applies......, and separate writings may be connected by oral evidence, provided they contain certain internal reference to each other." Reed on the Statute of Frauds, Vol. 1, Sec. 341 (also see Sec. 351) says: "The memorandum required by the statute of frauds may be on different papers, one of which must contain reference to the other." Brandt on Suretyship and Guaranty (3d Ed.), Vol. 1, p. 195, states: "The subject-matter of the contract must appear from the writing, but it may be expressed in general terms, and parol evidence is admissible to identify it." See also Browne on the Statute of Frauds (5th Ed.), Secs. 345, 346, 348, which states the rule as already given from the other text books, and Beckwith v. Talbot, 95 U. S. 289, 292. We have numerous cases in Pennsylvania bearing either directly or by analogy upon the subject before us. In Smith & Fleek's App., 69 Pa. 474, 480, the paper in question was an agreement to sell land, the premises

being therein referred to simply as "The Rose Pine Tract," and further designated as "that piece bought of Rose by Smith." In holding this to be sufficient within the statute of frauds, we said: "If the subject of the contract is described, parol evidence is admissible to apply the description." In Ross v. Baker, 72 Pa. 186, 189, 190, the writing described the land sold as the "Fleming Farm on French Creek," and this was held to be sufficient. In Henry v. Black, 210 Pa. 245, 249, the instrument described a hotel property by simply stating its name, without more, and we held this to be sufficient. In Ranney v. Byers, 219 Pa. 332, 339, the writing referred to a piece of real estate as the "Byers place," and in holding this sufficient we said: "When the settlor described the property by a name recognized by himself and the cestui que trust......parol evidence will be admitted to apply the description; this is simply identifying......and not establishing the subject-matter...... by parol evidence." In Shively v. Black, 45 Pa. 345, we held that "the consideration of a written agreement to answer for the debt of another need not be expressed in writing, but may be proved by other evidence." In Aldridge & Co. v. Eshleman, 46 Pa. 420, 422, 426, the defendant signed a paper in which he agreed to become "responsible for merchandise bought by my brother ......to the amount of six hundred ($600) dollars." Parol evidence to show the meaning of the phrase "merchandise bought," was refused. In reversing we said: "We think the learned judge erred when he rejected Stevens's deposition; whilst it is true that the construction of the paper was for the court, it was their duty to construe it with reference to the subject-matter and the circumstances of the parties, and these were explainable by parol evidence......'Merchandise bought' are words which......more certainly apply to a past transaction, than to a future; but in view of the circumstances explained in Stevens's deposition, we have no doubt that the parties meant purchases both past and future." In

Manderbach, Admr., v. Gilbert, 2 W. N. C. 129, suit was brought to recover $1,000, evidenced by a promissory note on which the defendant was an irregular endorser. A letter was offered by the plaintiff, dated five days after the note, wherein the defendant referred, in a vague way, to a $1,000 loan made by the plaintiff to the drawer of the note and to the fact that the latter "has mine and Burkholder's (another irregular endorser) name"; this was the only identification of the original debt contained in the letter. Parol evidence was admitted to show that the $1,000 referred to was the same debt covered by the note; subsequently the court was asked to instruct the jury to disregard this testimony, which it declined to do, but charged that the defendant was not liable on the endorsement, adding, however, "But by the letter of July 30, 1870, he writes to the plaintiff and refers to the note for $1,000; if you find that this letter refers to the note in suit, it is such an agreement or assumption as to create a liability on the part of the defendant to pay the note." On appeal we affirmed per curiam. In Mc-Dowell v. Lehigh Valley Iron Co., 8 W. N. C. 137, A. wrote to B. that he had agreed to sell the Moselem Iron Co. certain ore, but felt doubtful as to the purchaser's solvency, adding, "We thought it best to write to you and get the information whether you would not guarantee us for what ore he will get." B. replied by letter, "All right. Send the ore, Moselem will pay it. She is not involved." Held, affirming the judgment below, that these letters constituted a valid contract of guaranty. In Goldbeck v. Eisele, 8 W. N. C. 512, where A. and B. by a written agreement entered into partnership, A. agreeing to pay B.'s debts, we held that the debts which he assumed to pay might be proved by parol evidence, stating: "When the plaintiff and defendant entered into partnership, Goldbeck agreed to provide for Eisele's debts; this was an agreement in writing. What then the debts were which Goldbeck assumed under this writing might be proved by parol evidence." In Eilbert v. Fink-

beiner, 68 Pa. 243, 244, 247, the suit was on a note upon which the defendant was an irregular endorser, and the written memorandum depended upon to show a guaranty consisted of a series of letters in which the defendant was alleged to have charged himself with the debt secured by the note. The one letter which referred to the subject-matter of the charge simply mentioned it as "those $600 which my son Henry borrowed from you on '19, 1867,'" and went on to say, "if Henry does not pay I shall pay it." Several offers of evidence in connection with the writings were refused, and a verdict was directed for the defendant. In reversing we call attention to the letters in the case, stating: "They were addressed to Eilbert......and acknowledged the writer's liability to him on the loan which he had made to his son Henry, the maker of the note, on July 19, 1867, which is its date; so that the identity of the transaction referred to with the note in suit is beyond all doubt." In Hewes v. Taylor, 70 Pa. 387, the memoranda sued on consisted of several letters, and we permitted oral evidence to show a mistake in the date of one of these, in order to complete a contract of guaranty which would have been unintelligible without the change of date, stating: "We think the contract found by the jury was logically deduced from the letters and testimony." Finally, in Goldsmith v. Stocker, 249 Pa. 180, 184, the note in suit was given as collateral security to protect its holder against liability by reason of his endorsement of another note of a third person. The original note was referred to in an endorsement on the note in suit, which read, "For note Reading National endorsed Isaac Goldsmith, J. Jacob Longenderfer, and J. Henry Stocker"; we held this endorsement to be a sufficient memorandum of a promise to pay the debt of another to satisfy the statute of frauds, saying, "The note was in writing and it was signed by the appellant as the statute requires; on the back......was a memorandum showing what indebtedness was intended to be secured by this collateral under-

taking"; after this we discuss the oral testimony which was admitted in that case to show the whole transaction between the parties, and then we remit the record for a new trial on another point, connected with an alteration of the memorandum on the back of the note.   Under the foregoing authorities it is clear that the $25,000 bond contains sufficient "internal reference" to the $112,-000 bond to connect them and justify the admission of both.

In Moore v. Eisaman, 201 Pa. 190, 193, 194, chiefly relied upon by the appellees, the sole written contract of guaranty consisted of the letters "O. K.," with the signature of the defendant, at the foot of an agreement made by the plaintiff with a third person, for the sale of bricks.   It was contended that this constituted a sufficient memorandum in writing to meet the requirements of the statute; but the court below ruled to the contrary, and refused to admit parol testimony to show that, in point of fact, the letters "O. K." were intended by the parties as a guarantee.   We affirmed this position, and in so doing said: "No parol testimony......can be admitted to establish a guaranty or engagement to pay the indebtedness of another when it exceeds $20.   The entire contract must be in writing, and oral testimony is not admissible to add to or supplement the writing in order to complete an insufficient written promise.   A defendant's liability on a guaranty of another's indebtedness cannot be established partly by parol and partly by written evidence, the whole agreement or memorandum thereof must be in writing......   Parol testimony to show either the intention of the parties or that they acted on the understanding that the writing was a guaranty, is supplying by parol a defective written guaranty which is prohibited by the statute of frauds."   The words which we have just quoted simply mean that the writing sued on must show a complete agreement of guaranty—in other words, that the entire guaranty of the debt of another must be in writing, but not that the

whole arrangement and contract between the parties in any way connected with the guaranty must be incorporated in the writing sued on. "It is the agreement to guarantee the debt or default of another which the act requires to be in writing": Hewes v. Taylor, 70 Pa. 387, 391. Parol evidence cannot be admitted to show that certain words not on their face a guarantee, do in fact constitute such; and that is the gist of our decision in Moore v. Eisaman. We did not say in that case, or mean to import, that a written guarantee being established, parol evidence is not admissible to show the situation of the parties or other relevant, contemporaneous facts, or that a separate writing containing an internal reference to another writing cannot be further connected therewith by parol evidence, nor did we mean that, when the subject-matter of the contract (here plaintiff's liability on the $112,000 bond) is expressed in general terms in the writing sued on, parol evidence is inadmissible further to identify this subject-matter or to show the loss accruing therefrom; to give such a meaning to our words in the Moore case would make that ruling at variance with the law established in the line of cases already discussed, none of which is there referred to, and this we did not intend to do. The other cases relied upon by the defendants are readily distinguishable from the present one, and call for no special comment. While none of the authorities cited can be said to rule the facts at bar, yet the principles laid down or recognized in those relied upon by the plaintiff apply here, and thereunder the plaintiff was entitled to an opportunity to prove its case.

All assignments of error which complain of rulings at variance with the views here expressed are sustained, and the judgment is reversed with a venire facias de novo.